We're here today because the District Court denied Akari Williams his Fourth Amendment right to be free from unconstitutional seizure, and based on that, essentially found that he could not take advantage of testimony at trial in which his co-defendants took advantage of and ultimately led to the dismissal of the co-defendants. Additionally, Akari Williams was denied standing, the trial court finding that he did not have standing in this case, and for those reasons, we asked this court to reverse. Akari Williams had no prior convictions and he is now serving a 14-year sentence. His two co-defendants, their motion to suppress the evidence was granted post-trial and their cases were ultimately dismissed. There are two issues I'd like to address with the court today while the District Court's ruling denying the motion to suppress the evidence was in error. First, that Akari Williams' trial counsel had good cause not to file the motion to suppress the evidence pretrial, and secondly, that Akari Williams had standing in the package in which he had a privacy interest, in which he had the tracking number for that package on his person, and in which he ultimately opened. First, I'd like to address good cause why Akari Williams' trial counsel did not file that pretrial motion to suppress. 12b3c is clear, that a motion to suppress the evidence must be filed pretrial. However, it provides that if the basis for the motion is reasonably available, reasonably available. 12c3 provides that a motion that is not filed pretrial is untimely unless there's good cause, good cause for the failure to follow that motion. I submit to the court, you must look first at the facts that were presented and provided to defense counsel prior to trial and the facts that availed themselves and were presented post-trial. And these will show that there was good cause why Robert Jenkins' trial counsel for Akari Williams did not file that motion to suppress pretrial. The evidence that was presented pretrial were the four corners of the search warrant. Search warrant that provided that a UPS store owner had opened a package, that law enforcement had gotten that information, and law enforcement had then executed a search warrant. Based on the four corners of that warrant, that this store owner was a government agent and this store owner had done a series of other things prior to that making her a government agent. That's all that Robert Jenkins had was the four corners of the warrant. Subsequently, and there was a pretrial motion to suppress the evidence, the other two defendants, which was denied by the trial court, in which that UPS store owner was not called at the pretrial motion, nor was the officer that had the direct contact with that store owner. At trial, there was testimony from the store owner. And the UPS store owner testified that she, in fact, had opened up 99% of the packages that came to her store over the past decade that she believed had drugs. So any package that she believed had drugs, 99% of the time she opened up those packages. And she guessed it was probably about one a month for the last 10 years. She also stated, and this is the important part of her testimony, besides the fact that she had been paid for some of these packages, she stated this, that law enforcement knew and acquiesced in the fact that she opened up these packages. They had knowledge that she was opening up these packages and they told her through her testimony, she testified, that they said, well, it's not a good idea, but it's your store, do what you want to do. So in effect, law enforcement knew that she was doing this and she, in fact, became a government agent for law enforcement. There was testimony also from Agent Heidel, who testified at the pretrial motion to suppress, who testified this UPS store owner had never opened up any packages and was directed not to open up any packages. So this testimony by the UPS store owner was the linchpin about the fact that she was actually a government agent. At the conclusion of the government's case, counsel for the co-defendant, Thompson, moved for a directed verdict and moved to reopen the motion to suppress the evidence. At that time, Robert Jenkins, counsel for my client, Akari Williams, the appellate, also joined in those motions. The defense counsel was apoplectic. He hadn't heard of this testimony before, actually changed the whole foundation for the motion to suppress. And the trial court, the district court, specifically asked Mr. Jenkins, was he joining in those motions? Yes, I am joining in those motions, those motions as well. And then additionally, the trial court asked, and I quote in the exchange's record on appeal 1931 through 1937, quote, the district court said, quote, I am not going to revisit the suppression hearing right now. The defendants have certainly... Excuse me, sir. Your clock is not running for some reason. Oh. What point do you think I'm... Okay, thank you. Thanks, Judge. The trial court said, quote, I am not going to revisit the suppression hearing right now. The defendants have certainly preserved their right to bring that up at a later date. The Code provides in the committee notes that good cause is a flexible standard. What I present to the Court is that the basis for the motion to suppress wasn't reasonably available to Mr. Jenkins at the time that he was given the search warrant. All he had were the four corners of the warrant, no information that this was a government agent. And in fact, when there was a motion to suppress the evidence, that evidence was not presented at the motion hearing. So when I submit to the Court, it's law enforcement actually knew that they had acquiesced to this in California. Constructively, the government knew this as well. But the one that suffers the consequence of this information, Brady information, exculpatory, if you will, to the motion to suppress, is Zachary Williams, and he's the one sitting with a 14-year sentence. His two co-defendants were ultimately released from these charges, and he sits with a sentence because he wasn't given this information, which ultimately the government has constructive knowledge of that. So I submit to the Court that was good cause. Note to the Court, the committee notes to 12c3, note that good cause is a flexible standard. And the reason for that is because it's not always available, in the notes to 12b3. A party might not have access to the information needed to raise particular claims. If there are any questions on that, I'd go into my standing issue. Secondly, when the trial court denied the motion for a new trial and motion to suppress the evidence, the trial court stated that Akari Williams did not have standing in this case. Akari Williams had standing in the package that all the parties agreed he was the intended recipient. He had the tracking numbers on his cell phone. There were text message exchanges between the sender of the package, co-defendant Thompson, and Akari Williams concerning where that package was to be mailed and different aspects of the delivery of that package. And fourthly, that package was ultimately brought to Akari Williams in which he opened it. That package was delivered to John Carey Lorette's residence on Gray Street, and that package right down the block is where Akari Williams lived. Akari Williams owned the residence where the package went to. The district court, in denying and finding that, in fact, Akari Williams didn't have standing, said, well, the addressee on the package was Carey Lorette. And the sender was an alias of Thompson, the co-defendant. So therefore, the trial court, district court found that Akari Williams did not have standing. And I submit to the court that was error, because all the totality of the circumstances showed that Akari Williams did have standing. He had arranged for this package to be sent to that address that he owned. He actually had the tracking number on his person for that package. The text messages back and forth between he and the sender showed where that package to be sent. And ultimately, when that controlled delivery was made to Lorette's residence, Lorette immediately took that package and brought it right down the street to Akari Williams' residence, and Akari Williams opened the package. And when he opened the package, there was a cell phone camera inside, and it took pictures of Akari Williams opening the package. All these events in total show that Akari Williams had a privacy interest in that package. The law under Rakes, and as this Court has articulated and Kai Soo Lee provides, that standing depends on whether the defendant is able to establish the subjective expectation of privacy with respect to the items being searched or items being seized, and two, whether that expectation of privacy is one which society would recognize as objectively reasonable. I submit to the court that Akari Williams had a subjective privacy interest in that package based on all the events, tracking number on his cell phone, the text messages back and forth, and ultimately having this sent to a residence he owned and him opening the package. And this is one that society would find objectively reasonable. In brief, we had discussed Villarreal, a case by the Fifth Circuit. In Villarreal, there were two defendants that were charged in that case, Villarreal and Gonzalez. Both of those individuals were ultimately charged with conspiracy to possess over 100 pounds of marijuana. There were two 55-gallon drums that were seized by law enforcement. A third party had had those drums shipped using an alias of Roland Martin, not Villarreal or Gonzalez. Those drums were shipped. Law enforcement did a search of the drums without a search warrant, and those drums were then taken by two other individuals to another location, and ultimately Gonzalez was arrested with the drums in the back of his truck, and he was in a bar. Villarreal was arrested with a receipt for the drums on his person. So neither Gonzalez or Villarreal wore Roland Martin. And this Court found that the Court couldn't determine who Roland Martin, the alias on the shipping labels, were, but said for Villarreal, he had a privacy interest in those drums, even though his name wasn't on the drums, because he had the shipping receipt, the receipt for the drums in his pocket, which showed that he had a privacy interest in those drums. The Court found that both Gonzalez and Villarreal had a privacy interest in those drums, and the evidence was suppressed. I submit to this Court that the case is important for two reasons. Number one, it shows that more than one individual can have a privacy interest in a thing, in this case the package, both Lorette, the addressee, and likewise Akari Williams, who had the tracking number on his cell phone. That showed he had a privacy interest. And secondly, the fact that Akari Williams had the tracking number showed that he had a privacy interest in this package and was interested in that package. And I think this is a privacy interest that society would recognize. Are there any questions on this standing issue, Your Honors? Thank you. I'm on rebuttal. Yes, sir. Yes, sir. Proceed, Judge Smith. Yes, sir. Thank you, Your Honors. May it please the Court, Kevin Boydman for the United States, and along with me are Diane Copes and Matt Page, who was trial counsel in this matter. I'll respond to the two issues that Mr. Jordan raised, which both regard the Fourth Amendment issue. In a nutshell, this Court should affirm the District Court's denial of relief here. The District Court correctly found that the motion filed was untimely and that there was no good cause. And the basic reason for that is because Akari Williams had the information he needed to file a motion to suppress timely, and he is not similarly situated to either Phillips, Thompson, or Carey Lorette, the other two charged defendants in this matter. Start off with the good cause argument, Your Honor. Suppression motions are supposed to be filed timely, well before trial, and the rules allow the hearing of a late motion only with a showing of good cause. The District Court correctly found no good cause here because there wasn't anything new that came out that was needed to file a motion to suppress. Mr. Jordan makes a point of saying if the basis of the motion is not available, that can be a reason for good cause to lay here a motion, and that's right, but that's not what you had here. The allegation here that Mr. Jordan raises is that Patricia Tarango, the UPS store owner who opened this box of meth in San Bernardino, California, was acting as an agent of the State, or an agent of the State of California, and did so without a warrant. This was not an argument that could not have been made, and this was information that would have been, that Patricia Tarango opened the box, was information that would have been provided in discovery, and there's been no allegation of a discovery violation or the defense didn't get that discovery. As the District Court made, certainly Akari Williams was aware by the time of trial and well before that, that Patricia Tarango opened this box and that the contents of the box would have been used as evidence against Mr. Williams. It was known so well that his co-defendants, Phillips Thompson, and Phillips Thompson filed a suppression motion arguing the exact issue, that Tarango was being used as an agent of the State. It was not limited to the four corners of the warrant, although the facts may have been, but certainly the allegation was made that Tarango was used as an agent of the State, and that motion is at 3253 to 3270 in the record. The other defendant, Carrie Lorette, adopted the pretrial motion at that time. There is nothing unique about Akari Williams which would have prevented him from at least adopting the motion at that time. I don't want to say the wrong thing, Your Honor, and I'll follow up. I do not believe they were present in the courtroom during the motion hearing. But the motion was filed publicly on PACER. It was not a sealed document. It was not a sealed proceeding. It was a District Court saying they knew or should have known that the motion was filed in that day and that it was being heard. Now, the fact that additional trial testimony came out at the trial from Tarango that arguably may have strengthened the merits of a motion to suppress didn't mean the basic facts were not available to Mr. Williams or available just as they were to Mr. Thompson and Mr. Lorette at the time previously. And so I don't think that shows, I think the District Court's right to find that that shows there was no good cause to wait for there. And aside from that, kind of piggybacking on to the good below, that in any event, at the Rule 29, in-trial Rule 29 hearing, trial counsel, Mr. Jenkins, adopted all the motions by Mr. — by Phillips-Thompson's counsel for the pendency of the prosecution. And I don't think the record supports that. I think it's an interpretation, but I think the District Court's interpretation is more correct. If you look at page 1931 of the record, this is when Phillips-Thompson counsel is at the — after the government is arrested, he makes two motions. He moves for a directed verdict, and he moves to re-urge his motion to suppress. After Thompson's counsel argues, the Court turns to Mr. Jenkins, Mr. Williams' counsel. And that's — at that point, Mr. Williams' counsel says, we adopt and join in the motions as well. And that's on page 1935 of the record, and I'll point out I inadvertently — or incorrectly stated 1934 in the brief, and it's actually 1935. But you'll see that that's two records right there. Those were the questions — those were the motions he was adopting. It wasn't an adoption of every motion made during the pendency, and it certainly didn't come across to the District Court as it was an adoption of every motion throughout the pendency of the hearing. And the District Court stated that what Akari Williams was attempting to adopt was a motion to re-urge. But the problem is you can't re-urge something you've never urged in the first place. And you can't adopt in trial a co-defendant's pretrial motion that has been resolved pretrial. And the Court came up with some reasons, and there are several reasons why that practice should not be allowed, several policy reasons. Quickly, just to double-check and follow up, Judge Weiner, Akari Williams was not present at the suppression hearing, and I'm getting that from my co-counsel and trial counsel. And ROA 3733 should help with that site. There are several policy reasons why it's not proper for a co-defendant to adopt another co-defendant's pretrial already-resolved motion during trial. There are several, and I can name five, that are pertinent to this case. And the first is simply that the rules don't allow it. The rules require — Rule 12 requires a motion to be filed before trial. And as the District Court recognized, to do otherwise allows the defendant, such as Williams in this case, to circumvent those clear and express rules. Another reason is that allowing it would actually affect the orderly criminal judicial proceedings and waste resources. The reason we have suppression hearings before, and the reason these issues are raised before trial, is that if there is a decision in favor of the defendant, evidence is excluded, it may obviate the need for a trial, and the time and expense is to bring a jury in to handle those. Another thing is it allows for the possibility of unnecessary gamesmanship and sandbagging. It would allow a defendant, such as Williams, to pretrial take a position saying, I have nothing to do with this package, I have no interest in this package, this package was not mine, the government's got me wrong. Go to trial, be faced with the evidence against you, realize the evidence is pretty hurtful to you, and then say, well, obviously it's not mine in light of what the government says, and now I didn't have that information before. That's a gamesmanship that doesn't need to be played, especially when a defendant is given the testimonial protections at a pretrial suppression hearing to take the stand and freely admit, I had these drugs, I had these package, and that kind of statement cannot be used against him later. Another reason, yes, Judge. When did Mr. Williams gain knowledge that the store owner was arguably an agent of the State? Well, I would, sure, Your Honor, I would say he had knowledge as soon as the discovery was given, at the same time that Phillips Thompson and Carrie Lorette would have had that. They would have had, in fact, looking again at 3253, which is Mr. Thompson's motion to suppress, timely motion to suppress the evidence. They argue that they had a deputy's report and in support of a warrant, and in there they make the argument that Patricia Tarango was an agent at that time and an agent of the State, and that she unlawfully opened the package at the time. So I see no reason why Mr. Williams wouldn't have the information at that same time as his co-defendants would have. There's been no argument that there was a discovery violation or anything withheld. There's an argument that he learned about it at trial that, and granted more evidence came out at trial from Patricia Tarango that certainly caused the district court to reconsider the motion later, but it didn't explain why the motion couldn't have been made at the first time. And I think that's the critical thing, that there's no reason to believe Mr. Williams didn't have it. And by Mr. Williams not filing timely, it prevented a fully developed record on the is another reason not to allow the late adoption. One example you see here in Mr. Jordan's brief is in addition to arguing about Tarango being an agent problem, he also argues that the search of his own house at 313 Grace was a violation of the Fourth Amendment, and he bases that on trial testimony, and I think in the reply brief says we didn't respond to it. Well, we didn't respond to it, but we also didn't have a fully developed record. A trial record is not the same issue as a suppression, so that's not the time to bring out exigent circumstances or legitimate privacy interests. Those things are not issues that would be before the jury, and the fact we don't have that because we don't have an evidentiary hearing to develop the record. And the reason we don't have a developed record on that is because Mr. Williams did not timely file his motion when he could have and had. He certainly by the time of trial, new police officers had entered his house, so there's no reason the motion couldn't have been made. So you're essentially arguing ineffective assistance of counsel? Respectfully, no, Your Honor, and I realize that's something that Mr. Jordan brings up, too. And I would say, similarly, the record is not fully developed at that time. It may be. Yes. And I would say this. There may, Mr. Jordan points out in his brief, there's no reason Mr. Jenkins should not have done it, and if he doesn't, he didn't do it, it was ineffective assistance. I would only say there could be several reasons why Mr. Jenkins did not file the motion. I can rattle off some, including maybe it was a coincidence, maybe he was cooperating and attempting to get a deal to the last minute. Maybe he felt, as the district court did, that his client did not have standing to bring it and the motion would have been frivolous. Those are just some things I can rattle off. The truth is, I don't know why Mr. Jenkins did it at this point, neither does Mr. Jordan, and it's simply because we haven't had an evidentiary hearing on that matter. So I don't think it's ineffective assistance of counsel on this record. You're playing for habeas. Yes. Well, I think, and I think the right thing to do would be let that play out later. So at a time, that could be, let that play out as this Court normally does in a habeas proceeding, and let that go down the line. I don't think the record is fully developed for this Court to address that at this point. Moving on to the issue of standing, the district court correctly found that too, and I would say this is an alternative reasoning. I think if you agree with the district court that there was no good cause for the late motion, I don't think you have to go any further than that. But if you do go to the alternative ruling, which I believe will be on plain error review, I think you can affirm and should affirm the district court here is finding that there was no standing. Mr. Jordan makes a point that Mr. Thompson and Mr. Lorette had the benefit of this. They were given, found to have standing, and they are no longer in jail. I'll only say that Mr. Williams, first and foremost, is just not similarly situated to either one of those defendants. And it comes down to the cases that we mentioned, the packaging cases of Daniel, Parks, Pierce, and the Givens and Kerning case that this Court relied on in deciding Pierce. The Villarreal case and the Richards case that Mr. Jordan cites talks about the person having the package that the package was pretty much being delivered for. As you just heard Mr. Jordan mention Villarreal, the person who was found to have standing had a receipt of the drugs in his pocket. Mr. Williams doesn't have that here. I thought he had a tracking number. What he had was a tracking number, and that was something that he and Mr. Thompson were going back and forth saying, send this to this address and here's the tracking number. But that doesn't show that he had a possessory interest in the box, Your Honor. All that shows is he was at most maybe a director of the conspiracy. He was directing things where they were going. Didn't Mr. Lorette also have a tracking number? I don't believe the record shows that, Your Honor. The phone evidence that was introduced were showing constant communications between Thompson and Lorette, and I think there were actually three or four packages similar to that. But what you would see on the package, at least, and you didn't see He didn't have to show that. He didn't go show the tracking number to the EPS people to pick it up. Mr. Williams? Yes. Oh, absolutely not. Somebody had to show something to go pick it up. Well, I think this one was delivered to the house in a controlled delivery, and what you have here is the sender, Phillips Thompson, used his own alias of Sam Neal. So he is the listed sender. Phillips Thompson is. The listed recipient is Lorette. The listed address is 332, which is Lorette's address. So it is from Phillips Thompson. Somebody had to show something, maybe EPS just left it, could leave it at the door. I don't know. This ended up being a controlled delivery by the agents. A run of the mill. A run of the mill, yes. Somebody would do it. And I think in this case, since it was addressed to Lorette, Lorette would have been the one that would have picked that up. What is important and what is pertinent here is it was not Williams. There is no indication that Williams was the one who What is the standard of review here? On the standing issue? The standard of who had a possessory interest. Yes, on that alternative. I believe looking at the Vasquez case, it is at best plain error. And I'll acknowledge I think there is an unanswered question in this court, Judge Owen. We didn't brief it, and so I won't go into it a lot since we didn't brief it. But you only get We have to apply a standard of review whether you briefed it or not. Correct. So tell me what you think it is. I think in most it is plain error under Vasquez. Vasquez talks about in light of the 2014 revisions to Rule 12. On the trial court's decision as to whether Williams had a possessory interest or not, what is the standard of review? That would be the plain error because that's coming under the suppression. But that's the overarching. But is it clearly erroneous? Oh. Is it a fact question? What is it? Oh, I'm sorry. The possessory interest, I think just like Is it a question of law because the facts are undisputed? Is it a factual question? What do you think the standard of review is? I believe we have it as a mixed question of facts and law where the facts are reviewed for clear error and conclusions of law de novo. I think you're And with the overall arch being plain error. And I think I finally understood what you're asking, Judge. And I certainly think the overarching standard of plain error is suggested by Vasquez. I think there's a question of if there's no good cause shown, do you even get to it at all? I think Vasquez suggests you do, but I don't think that's definitive. And without getting too much, I'll emphasize a Tenth Circuit case just came out two days ago, United States v. Bowline, which actually kind of categorizes where the courts are on that issue of whether it can be resolved or not. And obviously, we didn't brief it. I didn't 28J it. But I will give you the site for it, Your Honor. 2019 Westlaw 1104658. And in short, it just kind of shows there's a split on whether you even hear it, if there's not a showing of good cause. But what you do hear for the standing under this error that under any standard of review, the district court got this right. Mr. Williams was neither the sender of the package. He was not the recipient of the package. He was not the named alias as the sender or the package. And it was not his address to receive the package. The only connection he has to this package is that after the sender sent it to a named recipient, the named recipient brought it to his house down the street. How come he owned the house where Lorette lived? An equivalent of a landlord, Your Honor, and I don't think we have any situation. He was renting it out. I don't think we have a situation, though, where just because you lease something out, you maintain a privacy interest of everything in that house. To do so would put every landlord having a privacy interest in just about every tenant's item. I don't think that's what we have here. What we really have here is that Mr. Williams may have been an intended recipient of the drugs, but that's not the test, and that Williams texted and may have even directed send the drugs here doesn't make him the recipient or the sender. It just makes him a leader in the conspiracy and one who's directing the organization. If we're going to say an intended recipient has a privacy interest in drugs at any time just because they're an intended recipient, we're really going to get back to the point where we have automatic standing. Just take the example of a source of cocaine in Houston who gives that cocaine to a mule who drives it to an intended recipient in New Orleans. Well, the intended recipient in New Orleans doesn't sit there with a kilo of coke. He gives it to somebody in Bogalusa. He gives it to somebody in Hamming. He gives it to somebody in Biloxi, Atlanta, Birmingham. And so all of these people are ultimate recipients of this drug. And so if the rule is intended recipients, everyone in the conspiracy would have standing to affect it. That's not what the law says. That's not what the Supreme Court has held. You have to have your own personal privacy rights. Mr. Williams doesn't. In fact, Mr. Williams has done everything to distance himself from this package in opening statements suggesting to the jury that the package was enslaved, suggesting in closing argument that they even have the wrong box, even in brief. Alternative arguments. It's not an election, I don't think. No, and I agree. It's not an election. But I think if you take a look at page 805 of the record, which is a Mr. Williams post-trial motion, he makes a statement in a footnote that says, page 405 of the record, I'm sorry, in a footnote, he says, I'm not admitting guilt, but if the government, basically I'm summarizing, but if the government argues that I'm guilty because I have this box, then it gives me standing. And that's a problem. The government doesn't give someone standing. You either have the privacy interest or you don't. You either have a Fourth Amendment right to argue or you don't. It has nothing to do with what the government gives. It's whether you have it. And here, as this Court summarized in Pierce, if you're not the sender nor the recipient, arguably you don't have a privacy interest in the package, even if you're the intended recipient of it. Consistent with that, you can affirm on this basis, Williams' name was not on this box. If his name or even his alias or even his home address, not his home address, his address as the recipient would have been on the box, this may be a different case. But they're not. He wants to claim a privacy interest in a box that was neither from him nor to him but actually went to a real third person who was the name recipient. Consistent with this Court's authority in Daniel, Parks, Pierce, and the out-of-circuit cases of Gibbons and Koerning that it relied on in deciding Pierce, the District Court got this one right. Mr. Williams does not have Fourth Amendment standing to bring this charge, and this Court should affirm. Unless there are any other questions, we'll submit the remaining arguments in our brief. Thank you, Your Honors. Please, the Court. I'd like to address the three issues that were brought up. First, the good cause. Secondly, the ineffective assistance of counsel that Judge Owen brought up. And finally, the standing issue and rebuttal. For the good cause, Your Honors, I do submit that there was evidence that was withheld from Akari Williams when anticipating whether or not to file a motion to suppress the evidence. The attorney doesn't just file a motion to suppress the evidence for a fishing expedition. And all that was provided to Akari Williams was a search warrant. There was no evidence that this was an agent for the government at the time that that search warrant was provided in discovery. Well, the co-defendants thought so, and they put it in a written filing with the Court. And why wouldn't that give counsel for Mr. Williams some reason to think maybe I should make the same motion or investigate further? And I understand that, Your Honor. And perhaps that might be a practice that could be used, but you didn't have the evidence that she was. In fact, the evidence that was provided was that this store owner had never opened any packages before, and then at trial stated that she had opened packages before. What evidence said she'd never opened them before? At the pretrial motion to suppress the evidence, docket number 240, I believe it is, Detective Hagel testified that in the 10 packages that Detective Hagel, Officer Hagel from California, that had received from this store owner, they had never been opened by her before. And that was testimony that came out at the pretrial motion to suppress the evidence. And what's interesting about that is then the store owner testifies that opened 99 percent of them for the last 10 years, 99 percent of the packages that I believed had drugs in them. Who said that? The store owner, Patricia Tarango. Who testified? Detective, I believe the name is Hagel, docket number 240. And that was the officer, one of the interdiction officers from California that had a connection with a UPS worker. She testified, but she wasn't actually, that is, the Officer Hagel testified at the pretrial motion to suppress, but she wasn't. Is that the record in this case? I believe it is, Your Honor. At the pretrial motion to suppress, docket number 240. Well, he was just saying of the 10 I got from her, she had not opened any. Yes, ma'am. Which is, that's not inconsistent with her. Well, 99 percent, if she opened one a month for 12 years, that would be 120. He didn't know that. No, he didn't know that. It's not false testimony or? No, Your Honor, but I think it puts the defense in an awkward position. Granted, defense counsel did not file a motion to suppress, and I think there was good cause, but I think, as Judge Owen, as you mentioned, it could be ineffective assistance of counsel for not filing that motion to suppress. And I do note that in brief, that under Strickland, that whether or not counsel's deficiencies were such that it affected the substantial right of the defendant, and I believe it has. We don't have, we can't get to ineffective assistance. We don't have the standard of review, I mean, the standard of conduct here. That would require a separate hearing. We cannot, from the trial record, we can't say that. I did posit in my brief, Your Honor, under Higdon, this Court has noted that in a rare case, indirectly. I don't think this is it. Pardon me? This does not look like the rare case because we don't have the record. Yes, ma'am. In any case, there would be an ineffective assistance of counsel claim if that were the case because it did affect the substantial right. I did present that argument in brief. However, I do believe that there was good cause here, and the reason for that is, as I mentioned before. Finally, I'd like to talk about standing because there was standing in this case. The cases mentioned by the government were all cases which can be factually distinguished. In this case, there's a difference because Akari Williams actually had the tracking number on his cell phone. What's unique about that, Viggo Rial obviously was received in his pocket in 1992. This is a modern age. We have tracking numbers on our cell phone. That's how we keep in touch with packages. Additionally, other layers of fact showing he had standing, that is, Akari Williams was texting back and forth with the sender about where to send the package, and that was on his cell phone. Send it to that address on Gray Street, which is right down the street from my house. And as soon as the package was controlled delivery to that house on Gray Street, it was immediately brought down the street to Akari Williams' house. It's like the kingpin of a truck operator saying drive the semi-truck to this address. Well, the difference is, Your Honor, just like in Viggo Rial, he had the tracking number, and he has a privacy interest in that, and he's the one that opened it. In this modern age, for example, my son wants to have some athletic gear sent to my house because he's living in the dorm at Tulane. Sent it to my house with my name on the package, but he's got the tracking number on his cell phone because he wants to know when that athletic gear is going to come to my house. When the athletic gear comes to my house with my name on it because it's sent to my address, I take that package, bring it to his dorm room, and he opens it. He opens the package. He has a tracking number, and he has a privacy interest in that package just like I do and just like they did in Viggo Rial. Are there any other questions, Your Honor? Thank you, sir. Thank you, Justice.